Carole B. CURRAN, Plaintiff,

v.

PORTLAND SUPERINTENDING SCHOOL COMMITTEE, CITY OF PORTLAND, MAINE, et al., Defendants.

Civ. No. 75–27–SD.

United States District Court, D. Maine, S. D.

July 18, 1977.

Peter L. Murray, and Philip F. W. Ahrens, III, Portland, Me., for plaintiff.

Hugh G. E. MacMahon, William J. O'Brien, Corporate Counsel, Portland, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Carole B. Curran, a female employee in the Portland School System, has filed this action against the City of Portland; the Portland Superintending School Committee; Linda E. Abromson, Edith S. Beaulieu, Arthur M. Burton, Jr., Selvin Hirshon, Ira E. Kemp, Clifford A. Richardson, Joyce Rogers, Mary Sottery and H. Gordon Crowley, all present or former members of the School Committee; Harold Raynolds, Jr., the present Superintendent of the Portland School System; Clyde Bartlett, the present Assistant Superintendent for Elementary Education in the Portland School System; and Frank Tupper and Rodney E. Wells, former Superintendents of the Portland School System. Claims are asserted against all individual defendants in their official capacities and against defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities as well. The second amended complaint sets forth three causes of action against all defendants: (1) Count I asserts a claim under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 86 Stat. 103 (1972), 42 U.S.C. § 2000e et seq., alleging employment discrimination on account of sex; (2) Count II, brought directly under the Fourteenth Amendment, alleges the deprivation of the equal protection of the laws resulting from sex-based employment discrimination; and (3) Count III contains claims under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3), alleging that defendants have, under color of law, deprived plaintiff of the right to seek public employment without discrimination on account of sex and have conspired to deprive her of the equal protection of the laws. Jurisdiction is variously asserted under 28 U.S.C. §§ 1331, 1343, 2201 and 2202 and 42 U.S.C. § 2000e et seq. Plaintiff requests a declaratory judgment in her favor under Count I and injunctive relief under both Counts I and II. She also seeks special, compensatory, and punitive damages, an award of back pay, costs and attorney's fees under all three counts.

Presently before the Court are defendants' motions for dismissal of all three counts of the complaint. For the reasons to follow, the Court has concluded that:

(1) The motions directed to Count I (the Title VII count) by all the individual defendants other than Bartlett must be GRANTED and Count I must be DISMISSED as against those defendants; the motions directed to

Count I by the City of Portland, the School Committee and Bartlett must be DENIED; the prayers for compensatory and punitive damages in Count I must be STRICKEN;

(2) The motions directed to Count II (the Fourteenth Amendment count) must be GRANTED and Count II must be DISMISSED as against all defendants;

(3) The motions directed to the damage claims in Count III (the Section 1983 and 1985(3) count) by the City of Portland, the School Committee, and all individual defendants in their official capacities, must be GRANTED and the damage claims in Count III must be DISMISSED as against the City of Portland, the School Committee and all defendants in their official capacities; the motions directed to the damage claims in Count III by defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities must be DENIED.

As the factual allegations of the complaint are substantially identical for all counts, they may be briefly set forth at the outset.[1] Plaintiff was and still is an employee of the School Committee and works in the Portland School System. She holds a Masters degree in psychology, is certified as a teacher, and has obtained her principal and counselor certificate subsequent to the events giving rise to this case. Plaintiff alleges a continuing pattern and practice of discrimination by defendants against plaintiff and other female employees in the Portland School System when recruiting, hiring, promoting and assigning females qualified for administrative jobs, and in the terms and conditions of employment of females. Defendants are also alleged to have failed to comply with statutory requirements concerning the maintenance of appli-

cant records and to have utilized sex-segregated job classifications.

In particular, plaintiff alleges that no notice was given to her or other qualified female employees of the Portland School System when the position of "Coordinator of Project Interact," a federally-funded program in the Portland schools, became vacant in August 1973. The complaint asserts that defendant Bartlett, then and now Assistant Superintendent of the Portland schools privately offered the position to a male whose qualifications were inferior to plaintiff's in October 1973, which offer was then accepted. The complaint alleges that following this incident plaintiff filed charges of sex-based discrimination with both the Maine Human Rights Commission (MHRC) and the Equal Employment Opportunity Commission (EEOC) in November 1973 and January and March 1974. Her complaint further alleges that defendants engaged in and continue to engage in "retaliatory harassment and intimidation" as a result of her initiating proceedings with these governmental agencies and that plaintiff filed subsequent charges alleging harassment with the EEOC in July, September and October 1974 and January 1975. The complaint asserts that on August 9, 1974, the EEOC issued a determination of reasonable cause to believe that plaintiff's charges were true and invited conciliation by the parties, which continued from September 1974 to January 1975. Finally, plaintiff alleges that on January 28, 1975 she received a notice of failure of conciliation from the EEOC and on February 26, 1975 a notice of right to sue from the Department of Justice. This action was commenced on March 21, 1975.

## I.

### *The Title VII Count (Count I)*

In Count I of the complaint, plaintiff alleges that the actions taken by defendants

---

1. The task of a federal court in reviewing the sufficiency of a complaint and the factual allegations contained therein is necessarily a limited one. The facts alleged in the complaint must be taken as true, and the complaint is to be construed in the light most favorable to plaintiff. The inquiry at this preliminary stage

of the proceedings is merely "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

constitute unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e–2.[2] Defendants have raised by their motions several jurisdictional and procedural defenses to Count I premised upon the alleged failure of plaintiff to comply with the statutory requirements of Title VII. In addition, they challenge the constitutionality of the 1972 Amendments to Title VII insofar as they extend the coverage of that statute to State and local governments. Finally, defendants question the availability of compensatory and punitive damages under Title VII. Each of these defenses will be separately considered.[3]

## A.

### Jurisdictional and Procedural Defenses

There are four basic jurisdictional and procedural defenses raised as to the Title VII count:

(1) plaintiff lacks standing under Title VII, as well as the other counts of the complaint, because she never applied for the position in question;

(2) defendants are neither an "employer" nor *plaintiff's* "employer" as that term is used in Title VII;

(3) the present civil complaint includes as defendants persons not named in the EEOC charges; and

(4) the claims of harassment, intimidation and retaliation in the present complaint were not the subject of a separate EEOC "right to sue" letter.

### 1. Standing

Defendants contend that plaintiff's failure to allege that she applied for the position of Coordinator of Project Interact is fatal to (1) her standing to bring any part

of this action under the decision of the Court of Appeals for this Circuit in *Jackson v. Dukakis,* 526 F.2d 64 (1st Cir. 1975), and (2) a statement of a prima facie Title VII case as defined by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These grounds for dismissal will be considered together as both concern the right to bring an employment discrimination action without in fact applying for a specific position. Two additional allegations of the complaint are relevant to this inquiry: (i) notice of the vacancy was not given to plaintiff or other qualified female employees within the Portland School System, and (ii) the failure to notify women and the private offering of the position to a male resulted from defendants' discriminatory actions.

■ To have standing to sue, plaintiff's allegations must indicate, first, "that the challenged action has caused [her] injury in fact, economic or otherwise" and, second, that "the interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Plaintiff's claim of employment discrimination under all three counts of the complaint clearly meets the second requirement of *Data Processing. See also* Parts II and III, *infra.* Defendants contend, however, that, under *Jackson v. Dukakis, supra,* she has not sufficiently alleged injury in fact.

■ In *Jackson,* the Court of Appeals denied standing, in a case arising under 42

---

**2.** The relevant portions of 42 U.S.C. § 2000e are set forth in Appendix A.

**3.** Although defendants' motions to dismiss assert a variety of other grounds for dismissal of the complaint, the Court will address only those contentions which have been pressed in defendants' briefs or at oral argument. All others are considered to have been waived. To clarify the record, the Court notes that plaintiff did timely file charges with the EEOC. The

charges of discrimination were referred to the MHRC, which waived jurisdiction. *See Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1971). There was no need to file subsequent charges of harassment initially with the MHRC after the state agency had waived jurisdiction over the original complaint. *Weise v. Syracuse University,* 522 F.2d 397, 412 (2d Cir. 1975); *cf. E.E.O.C. v. Raymond Metal Products Co.,* 530 F.2d 590, 597 (4th Cir. 1976).

U.S.C. §§ 1981 and 1983, to a black person who sought to sue various Massachusetts state agencies for racially discriminatory hiring policies although he was not employed by any of the agencies and had not in fact applied for a job. The court concluded that plaintiff had not met the threshold requirement of injury in fact because he had never sought employment with defendants. The court distinguished, however, decisions permitting class actions on behalf of persons who had never applied for employment with defendants on the ground that "generally the named plaintiffs representing the class are already applicants *or employees.*" *Id.* at 67 (emphasis supplied). As plaintiff in this case was (and is) an employee of the Portland School System, this status coupled with the allegations that defendants intentionally did not provide her and other female employees with notice of the job opening, thus depriving her of the opportunity to apply, clearly allege sufficient "injury in fact" to distinguish the present case from *Jackson. See Gray v. Greyhound Lines, East,* 178 U.S. App.D.C. 91, 545 F.2d 169, 175, n. 17 (1976). Plaintiff could hardly have applied for a position of which she was never made aware.

■ Defendants also contend that plaintiff must have actually applied for the position of Coordinator to fulfill one of the requirements of a prima facie case under Title VII set forth in *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824: "(ii) that [plaintiff] *applied* and was qualified for a job for which the employer was seeking applicants." (emphasis supplied) Justice Powell, writing for the Court, noted, however, that these requirements should not be applied in a rigid manner. "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802, n. 13, 93 S.Ct. at 1824.

The statute itself permits "a person claiming to be aggrieved" to file a charge with the EEOC. 42 U.S.C. § 2000e–5(b).

The statute further provides that after the Commission proceedings have terminated, suit may be brought by "the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1). This phrase has been interpreted as evidencing a "congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Hackett v. McGuire Brothers, Inc.,* 445 F.2d 442, 446 (3d Cir. 1971). Title VII states clearly that it is an unlawful employment practice for an employer "to limit, segregate or classify his employees or *applicants* for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ." (emphasis supplied) 42 U.S.C. § 2000e–2(a)(2). Moreover, the Supreme Court has recently held that failure of an incumbent employee to formally apply for a job does not constitute a *per se* barrier to relief. *International Brotherhood of Teamsters v. United States,* —— U.S. ——, ——, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The fact that plaintiff did not apply for the Coordinator position does not prevent her challenge to defendants' employment practices, as it is her contention that these very practices made it impossible for her to apply. *See Peltier v. City of Fargo,* 396 F.Supp. 710, 720 (D.N.D.1975), *rev'd on other grounds,* 533 F.2d 374 (8th Cir. 1976).

The Court holds that plaintiff has standing to sue under all three counts of the complaint and that Count I of her complaint sufficiently sets forth a prima facie case under Title VII. *Peltier v. City of Fargo, supra; cf. McDonald v. General Mills, Inc.,* 387 F.Supp. 24 (E.D.Cal.1974).

## 2. Definition of "Employer" Under Title VII

Various defendants contend that they are not plaintiff's "employer" for purposes of Title VII.

■ The 1972 Amendments to Title VII extended the definition of "person" for purposes of that statute to include "governments, governmental agencies, [and] politi-

cal subdivisions." 42 U.S.C. § 2000e(a). A "person" so defined, and "any agent" of that person, is an "employer" falling within the coverage of Title VII. 42 U.S.C. § 2000e(b), (h). There is no question that the City of Portland and the School Committee are both "employers" for purposes of Title VII. *E. g., United States v. City of Milwaukee*, 395 F.Supp. 725, 727–28 (E.D. Wis.1975). And as that statute includes "any agent" of such an employer within the statutory definition, the past and present members of the School Committee and Superintendents of the School System also qualify as "employers" if they are agents of either the City or the School Committee. *Harbert v. Rapp*, 419 F.Supp. 6, 7 (W.D. Okla.1976); *Hanshaw v. Delaware Technical & Community College*, 405 F.Supp. 292, 296 (D.Del.1975). As only a motion to dismiss the complaint is presently before the Court, no factual determination of the presence or absence of an agency relationship between the individual defendants and the institutional defendants can be made. The relationship as alleged in the complaint, however, suffices to withstand dismissal at this stage.

■ The City argues strenuously that it is not *plaintiff's* "employer" under Title VII, since it has no connection with the actual employment of teachers and other school personnel. It is true that the School Committee and the Superintendent are given the responsibility and authority for the employment of teachers and other personnel, 20 M.R.S.A. §§ 161(5), 473, and the City is not permitted by its charter to become involved in the actual administration and management of the School System. *See* The Charter of the City of Portland, Art. I § 2 and Art. III § 4. The authority of the School Committee is limited, however, by the role of the City in appropriating funds for the support of the public school system, including salaries of personnel. *Sawin v. Town of Winslow*, 253 A.2d 694, 699 (Me. 1969); Charter, Art. III § 4. In such circumstances, it cannot seriously be doubted that the City is sufficiently involved in, and, in fact, necessary to, the total employment process that it must be considered plaintiff's employer for purposes of jurisdiction under Title VII. *Cf. Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974); *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1974). *But cf. Smith v. Dutra Trucking Co.*, 410 F.Supp. 513, 517–18 (N.D.Cal. 1976).

The Court holds that Count I of the complaint is not subject to dismissal as against any defendant for failure sufficiently to allege that the defendant is plaintiff's "employer" for purposes of Title VII.

### 3. Defendants Not Named in EEOC Charges

The City of Portland and the individually named defendants move for dismissal of Count I as against them because plaintiff failed to name them in her charges filed with the EEOC. The record discloses that the School Committee is named as respondent in each charge filed with the EEOC, and defendant Bartlett is named as a person who has "discriminated against" plaintiff in several charges.[4] The City of Portland, as a separate entity, is not named in any of the EEOC charges, nor are any of the individual defendants other than Bartlett.

■ Title VII provides that if after a charge of discrimination is filed the EEOC is unable to obtain compliance with the law, "a civil action may be brought against the respondent named in the charge" by the person claiming to be aggrieved. 42 U.S.C. § 2000e–5(f)(1). This has been interpreted to constitute a jurisdictional prerequisite, and an employer may not be named in a subsequent civil suit unless he has been first charged before the EEOC. *Bowe v. Colgate-Palmolive Company*, 416 F.2d 711 (7th Cir. 1969); *E.E.O.C. v. McLean Trucking Co.*, 525 F.2d 1007 (6th Cir. 1975); *Evans v. Sheraton Park Hotel*, 164 U.S.App.

---

4. In examining the charges filed with the EEOC, all charges made by plaintiff must be considered, not simply the initial complaint. *See* Part I, A(4), *infra.*

D.C. 86, 503 F.2d 177 (1974); *Miller v. International Paper Co.*, 408 F.2d 283 (5th Cir. 1969); *Mickel v. South Carolina State Employment Service*, 377 F.2d 239 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); *Puntolillo v. New Hampshire Racing Commission*, 390 F.Supp. 231 (D.N.H.1975). There are two reasons for this requirement:

> First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance.

*Bowe v. Colgate-Palmolive Co.*, supra at 719.

■ This rule is less than absolute, however, and several exceptions have been recognized as sufficient to confer jurisdiction over defendants in a civil action who were not named in the EEOC charges. These exceptions are: (1) if there was "substantial identity" between the respondent named in the EEOC charges and defendants in the civil action; (2) if the named respondent acted as the "agent" of the defendant sought to be included in the civil action, at least when the latter defendant had notice of and participated in the conciliation proceedings; and (3) if the defendant is an "indispensable party" under Fed.R.Civ.P. 19 in order to accord complete relief to the parties. *Stith v. Manor Baking Co.*, 418 F.Supp. 150, 156 (W.D.Mo.1976), and cases cited therein.

■ As previously noted, the individual defendants other than Bartlett were not named in the charges filed by plaintiff with the EEOC. Moreover, the complaint does not allege that these defendants received either actual or constructive notice of the EEOC proceeding or knew or should have known that their conduct was the subject of inquiry. "While liberality in construction should be favored, minimum standards of statutory compliance are essential to avoid bypassing of the Commission and the statutory emphasis on voluntary compliance and conciliation." *Scott v. University of Delaware*, 385 F.Supp. 937, 941 (D.Del.1974).

On this record, it is clear that Count I must be dismissed as against the individual defendants, other than Bartlett. *Scott v. University of Delaware, id.* at 940–43; *Jackson v. University of Pittsburgh*, 405 F.Supp. 607, 614–18 (W.D.Pa.1975). *See also Stith v. Manor Baking Co.*, supra at 156–57; *Bernstein v. National Liberty Int'l Corp.*, 407 F.Supp. 709, 714–16 (E.D.Pa.1976); *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 835 (N.D.Cal.1973). *But see Byron v. University of Florida*, 403 F.Supp. 49, 53–54 (N.D.Fla.1975).

■ The motions to dismiss filed by the City and by defendant Bartlett must, however, be denied. Bartlett was charged before the EEOC. And although not named in the EEOC charges, the City was charged in plaintiff's notice of discrimination filed with the MHRC on January 17, 1974, thus having actual notice of plaintiff's attempts to achieve an administrative remedy. Moreover, pursuant to the analysis in *Evans v. Sheraton Park Hotel*, supra at 180–84, *E.E.O.C. v. McLean Trucking Co.*, supra at 1011–12, and *Townsend v. Exxon Co.*, 420 F.Supp. 189, 190 n. 1 (D.Mass.1976), *see also Hardy v. Bucyrus-Erie Co.*, 398 F.Supp. 64 (E.D.Wis.1975), it is evident that the City is an indispensable party to this action under Fed.R.Civ.P. 19 if complete relief is to be accorded to the parties. Under the Maine Constitution, Art. VIII § 1, the City bears the primary responsibility for the support and maintenance of its public school system. Under the City's charter, Art. III § 4, the School Committee may not exceed the budget allotted it by the Portland City Council without the latter's consent. Funds to pay any back pay award to plaintiff would have to be approved and appropriated by the City Council, and sums necessary to implement any injunctive relief granted to plaintiff would require action by the City Council.

The Court holds that Count I of the complaint must be dismissed as against the individual defendants other than defendant Bartlett because of plaintiff's failure to name them in the charges filed by her with the EEOC, but that Count I is not subject

to dismissal on this ground as against the City of Portland, the School Committee and defendant Bartlett.

### 4. Charges of harassment, intimidation and retaliation

Defendants raise one final jurisdictional challenge to plaintiff's Title VII action. They argue that because the charges of harassment, intimidation and retaliation contained in the present complaint were not set forth in plaintiff's initial complaint filed with the EEOC in November 1973, they were not within the scope of the "right to sue" letter issued to plaintiff by the Department of Justice in February 1975. They contend therefore that the "right to sue" letter did not permit suit on these supplementary charges and that the claims of harassment, intimidation and retaliation in the present civil complaint must be dismissed. See, e. g., Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 897–98 (D.Me. 1970); Edwards v. North American Rockwell Corp., 291 F.Supp. 199, 203–05 (C.D. Cal.1968).

Plaintiff's first charges of employment discrimination were filed with the EEOC in November 1973 and again in March 1974. In addition to alleging sex-based discrimination in filling the Coordinator position, plaintiff also charged a continuing pattern and practice of discrimination against females in recruiting, hiring, and terms and conditions of employment. In subsequent charges filed with the Commission in July, September and October 1974 and January 1975, plaintiff alleged that, as a result of exercising her statutory right to seek recourse against defendants for their prior discriminatory conduct, defendants harassed and intimidated her on the job.[5] In August 1974 the EEOC issued a determination that reasonable cause existed to believe that plaintiff's charges were true and invited conciliation by the parties. Conciliation proceeded from September 1974 to January 1975 while plaintiff and representatives of

defendants attempted to arrive at an informal settlement. On January 28, 1975, the EEOC issued a notice of failure of conciliation, and on February 26, 1975, plaintiff received from the Department of Justice a "right to sue" letter. This action was timely commenced on March 21, 1975.

It is clear that the allegations of harassment, intimidation and retaliation grew directly out of plaintiff's initial complaint of unlawful discrimination with respect to the Coordinator position and that these subsequent charges were the subject of the Commission's conciliation efforts. Confronted with a similar issue in Sciaraffa v. Oxford Paper Co., supra at 898, this Court stated that:

> [t]he courts have generally required no more than that the charge provide the Commission with general notice of the matter to be investigated, and that the issues properly presented in a subsequent court action may include those which grow out of or are reasonably related to the Commission's investigation.

It is now well established that this is the governing standard for defining the parameters of a civil action under Title VII and that new acts of discrimination which occur during the pendency of proceedings before the Commission may also be included in the court action. Ostapowicz v. Johnson Bronze Co., 541 F.2d 394 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); Gamble v. Birmingham So. R. R. Co., 514 F.2d 678 (5th Cir. 1975); Oubichon v. North American Rockwell Corp., 482 F.2d 569 (9th Cir. 1973). Cf. E.E.O.C. v. General Electric Co., 532 F.2d 359 (4th Cir. 1976); E.E.O.C. v. Occidental Life Ins. Co., 535 F.2d 533 (9th Cir. 1976), aff'd, —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

The Court holds that the claims of intimidation, harassment, and retaliatory conduct by defendants in Count I of the complaint

---

**5.** Retaliation such as that alleged by plaintiff is itself an unlawful employment practice under Title VII. 42 U.S.C. § 2000e–3. See, e. g., E.E.O.C. v. Kallir, Philips, Ross, Inc., 401 F.Supp. 66 (S.D.N.Y.1975); cf. Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976).

are not subject to dismissal because the Commission did not issue a separate "right to sue" letter with respect to those charges.

### B.

### Constitutionality of the 1972 Amendments to Title VII

Defendants' challenge to the constitutionality of the 1972 Amendments to Title VII insofar as they extend the coverage of Title VII to State and local governments need not long deter the Court.[6] The basis of defendants' attack is the supposed lack of power on the part of Congress to regulate this aspect of State governmental activity. But the recent decision of the Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) removes any doubt as to the constitutional authority of Congress to enact the 1972 Amendments.

In *Fitzpatrick*, the Supreme Court noted that "[t]here is no dispute" that in enacting the 1972 Amendments to Title VII to extend coverage to States and local governments, Congress exercised its power under § 5 of the Fourteenth Amendment "to enforce, by appropriate legislation, the provisions of this article." *Id.* at 453 n. 9. 96 S.Ct. at 2670. *See also* H.R.Rep.No.92-238, 92d Cong., 2d Sess., 1972 U.S. Cong. & Admin. News 2153-54. Thus, *Fitzpatrick* settled that the constitutional basis of the 1972 Amendments is § 5 of the Fourteenth Amendment. *United States v. State of New Hampshire*, 539 F.2d 277, 280-81 (1st Cir.), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 641, 50 L.Ed.2d 625 (1976); *United States v. City of Milwaukee, supra* at 728; *Howard v. Ward County*, 418 F.Supp. 494, 501 (D.N. D.1976).

*Fitzpatrick* upheld the power of Congress, acting under § 5 of the Fourteenth Amendment, to authorize federal courts in a Title VII case to award money damages in the form of back pay and attorneys' fees in favor of a private individual against a State government found to have subjected that person to sex-based employment discrimination. Although the constitutionality of the substantive provisions of Title VII as applied to State and local governments by the 1972 Amendments was not before the Court in *Fitzpatrick, id.*, 427 U.S. at 456 n. 11, 96 S.Ct. 2666, the Court's analysis of the relationship between the enforcement power granted to Congress under § 5 of the Fourteenth Amendment and the principle of State sovereign immunity embodied in the Eleventh Amendment is dispositive of the issue presently before this Court.

Having first noted that the "threshold fact of congressional authorization," *Edelman v. Jordan*, 415 U.S. 651, 672, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), to sue the State as employer is clearly present in a Title VII case, *Fitzpatrick, supra* 427 U.S. at 452, 96 S.Ct. 2666, the Court continued:

> It is true that none of these previous cases presented the question of the relationship between the Eleventh Amendment and the enforcement power granted to Congress under § 5 of the Fourteenth Amendment. But we think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, see *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts

---

6. The 1972 Amendments to Title VII were enacted in Section 2 of the Equal Employment Opportunity Act of 1972, 86 Stat. 103. As relevant here, the definition of "person" in Section 701(a) of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. § 2000e(a), was amended by § 2(1) of the 1972 Act, 86 Stat. 103, 42 U.S.C. § 2000e, to include "governments, governmental agencies, [and] political subdivisions." The express exclusion of "a state or political subdivision thereof" from the definition of "employer" in Section 701(b) of the 1964 Act was stricken by § 2(2) of the 1972 Act, 86 Stat. 103, 42 U.S.C. § 2000e(b). Section 2(5) of the 1972 Amendments, 86 Stat. 103, 42 U.S.C. § 2000e(f), amended § 701(f) of the 1964 Act to include within the definition of "employee" those individuals "subject to the civil service laws of a State government, governmental agency or political subdivision."

pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. *We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.* See *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). *Id.* at 456, 96 S.Ct. at 2671 (emphasis supplied).

 It cannot be doubted that in extending the coverage of Title VII to State and local government employees, the 1972 Amendments constitute "appropriate legislation" for the purpose of enforcing the substantive provisions of the Fourteenth Amendment. Title VII was enacted to eliminate discriminatory employment practices based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2; *Alexander v. Gardner-Denver,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). And the extension of these protections to State and local government employees in 1972 is unquestionably an appropriate means for Congress to enforce the Equal Protection of the Laws provision of the first section of the Fourteenth Amendment. *See United States v. State of New Hampshire, supra; United States v. City of Milwaukee, supra; Howard v. Ward County, supra; cf. Usery v. Allegheny County Institution Dist.,* 544

F.2d 148 (3d Cir. 1976) and *Usery v. Bettendorf Community School District,* 423 F.Supp. 637 (S.D.Iowa 1976) (equal pay provisions of Fair Labor Standards Act, 29 U.S.C. § 206(d)(1), validly extended to State and local governments); *Usery v. Salt Lake City Board of Education,* 421 F.Supp. 718 (D.Utah 1976) (Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* validly extended to State and local governments).

The Court holds that defendants' constitutional objections to the 1972 Amendments to Title VII must be rejected.[7]

#### C.

*Compensatory and Punitive Damages Under Title VII*

In her prayer for relief under Count I, plaintiff requests, in addition to the usual Title VII remedies of reinstatement, back pay and injunctive relief, both compensatory and punitive damages. Defendants move to dismiss the prayers for compensatory and punitive damages on the ground that they are not recoverable under Title VII.

The relevant section of Title VII, 42 U.S.C. § 2000e–5(g), reads in pertinent part:

If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . ., the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or

---

7. Defendants' reliance on *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) is misplaced since the proper exercise of congressional authority under § 5 of the Fourteenth Amendment was not at issue in that case. In finding unconstitutional the 1974 Amendments to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.,* which extended the minimum wage and maximum hour provisions to almost all public employees employed by the States and by their political subdivisions, the Court held that Congress may

not exercise its power under the Commerce Clause "so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *Id.* at 852, 96 S.Ct. at 2476. The Court explicitly disclaimed, however, any opinion on the power of Congress to affect integral operations of State governments by exercising authority granted it under other sections of the Constitution such as § 5 of the Fourteenth Amendment. *Id.* at 852 n. 17, 96 S.Ct. 2465.

any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

Nowhere does the statute itself, which speaks solely in terms of equitable relief, expressly authorize an award of any money damages, either compensatory or punitive, other than back pay, which is limited to a two-year period and reduced by the amount of any interim earnings.

 While there is a split of authority on this issue, the clear majority of federal courts, upon analysis of the language and statutory history of Title VII, have concluded that neither compensatory nor punitive damages are available in a Title VII case, and this Court is persuaded to join them. *E. g.*, punitive damages not recoverable: *Russell v. American Tobacco Co.*, 528 F.2d 357, 366 (4th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976); *E.E.O.C. v. Detroit Edison Co.*, 515 F.2d 301, 308–10 (6th Cir. 1975), *vacated on other grounds*, ── U.S. ──, 97 S.Ct. 2669, 53 L.Ed.2d 267 (U.S. June 6, 1977); *Grohal v. Stauffer Chemical Co.*, 385 F.Supp. 1267, 1269 (N.D.Cal.1974); neither compensatory nor punitive damages recoverable: *Pearson v. Western Electric Co.*, 542 F.2d 1150, 1151–53 (10th Cir. 1976); *Alexander v. Consolidated Freightways Co.*, 421 F.Supp. 450 (D.Col.1976); *Marshall v. Electric Hose & Rubber Co.*, 413 F.Supp. 663, 666 (D.Del. 1976); *Presseisen v. Swarthmore College*, 71 F.R.D. 34, 45–46 n. 12 (E.D.Pa.1976); *Whitney v. Greater N.Y. Corp. of Seventh-Day Adventists*, 401 F.Supp. 1363, 1368–71 (S.D.N.Y.1975); *Loo v. Gerarge*, 374 F.Supp. 1338, 1341 (D.Hawaii 1974); *Howard v. Lockheed-Georgia Co.*, 372 F.Supp. 854, 855–56 (N.D.Ga.1974); *Van Hoomissen v. Xerox Corp.*, *supra* at 835–38 (N.D.Cal. 1973); compensatory damages not recoverable: *Wright v. St. John's Hospital*, 414 F.Supp. 1202, 1208 (N.D.Okla.1976); *Tooles v. Kellogg Co.*, 336 F.Supp. 14, 18 (D.Neb.

1972). *See* Developments in the Law—Employment Discrimination, Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1259 (1971). *See also Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *But see Claiborne v. Illinois Central R. R.*, 401 F.Supp. 1022 (E.D.La.1975) (punitive damages recoverable); Implying Punitive Damages in Employment Discrimination Cases, 9 Harv.Civ.Rights—Civ.Lib.L.Rev. 325 (1974).

 The prayers for compensatory and punitive damages will be stricken from Count I of the complaint on the ground that such relief is not available under Title VII.

## II.

### *The Fourteenth Amendment Count (Count II)*

In Count II of the complaint, plaintiff asserts a cause of action based directly on the Fourteenth Amendment, claiming that defendants have deprived her of the equal protection of the laws by reason of sex-based employment discrimination. Count II invokes "federal question" jurisdiction under 28 U.S.C. § 1331(a) and alleges the amount in controversy to exceed $10,000, exclusive of interest and costs. Defendants have moved to dismiss this count for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

 The possibility of a direct cause of action under the Fourteenth Amendment pursuant to § 1331(a) jurisdiction was raised by the Supreme Court in *City of Kenosha v. Bruno*, 412 U.S. 507, 514, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *see also* 412 U.S. at 516 (Brennan, J., concurring). The Court has, however, twice recently declined to decide whether, by analogy to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see also Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), such a cause of action may be implied. *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 276–279, 97 S.Ct. 568,

571, 572, 50 L.Ed.2d 471 (1977); *City of Charlotte v. Local 660*, 426 U.S. 283, 284 n. 1, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976). *See also Aldinger v. Howard*, 427 U.S. 1, 4 n. 3, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The Court of Appeals for this Circuit has also found it unnecessary to reach this troublesome issue. *Comtronics v. Puerto Rico Telephone Co.*, 553 F.2d 701, 717 (1st Cir. 1977); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, note at 3 (1st Cir. 1976). This Court also need not decide this delicate question. Even if it were assumed that federal jurisdiction of a claim for violation of the Fourteenth Amendment may be grounded on § 1331(a) and that the "person" requirement of 42 U.S.C. § 1983 is not a jurisdictional bar to a constitutional suit against a municipality, *see, e. g., Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 577 (7th Cir. 1975); *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 805 (9th Cir. 1975); *Calvin v. Conlisk*, 520 F.2d 1, 8–10 (7th Cir. 1975), *vacated on other grounds*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975); *Roane v. Callisburg Independent School District*, 511 F.2d 633 (5th Cir. 1975); *Skehan v. Board of Trustees*, 501 F.2d 31, 44 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *United Farmworkers of Florida Housing Project v. City of Delray Beach*, 493 F.2d 799, 801–02 (5th Cir. 1974); *Panzarella v. Boyle*, 406 F.Supp. 787 (D.R.I.1975); Note, Damage Remedies Against Municipalities for Constitutional Violations, 89 Harv.L.Rev. 922, 935–51 (1976),[8] a private right of action directly under the Fourteenth Amendment will be

implied only when necessary and appropriate to vindicate the constitutional interest asserted. *Bivens v. Six Unknown Federal Narcotics Agents, supra*, 403 U.S. at 407, 91 S.Ct. 1999 (Harlan, J., concurring); *Crosley v. Davis*, 426 F.Supp. 389, 394 (E.D.Pa. 1977); see Dellinger, Of Rights and Remedies: The Constitution as a Sword, 85 Harv. L.Rev. 1532, 1550–51 (1972). In the present case, it is neither necessary nor appropriate to imply a cause of action for injunctive or monetary relief based on the Fourteenth Amendment. As Congress has so recently and comprehensively addressed the precise issue of municipal liability for sex-based employment discrimination through the passage of the 1972 Amendments to Title VII, the "precisely drawn, detailed statute pre-empts more general remedies." *Brown v. G. S. A.*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), quoted with approval in *Comtronics, Inc. v. Puerto Rico Telephone Co., supra* at 707. *Compare Davis v. Passman*, 5 Cir., 544 F.2d 865, 872–76, *petition for rehearing granted*, 553 F.2d 506 (5th Cir. 1977).

The Court holds that Count II of the complaint must be dismissed as against all defendants.

### III.

#### *The Section 1983 and 1985 Count (Count III)*

In Count III of the complaint plaintiff asserts causes of action based on the Civil Rights Act of 1871 (42 U.S.C. §§ 1983 and 1985(3)[9]), alleging that defendants have under color of law subjected her to the deprivation of rights, privileges or immunities

---

8. *See also Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976); *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976); *Brault v. Town of Mitton*, 2 Cir., 527 F.2d 730, *rev'd on other grounds*, 527 F.2d 736 (2d Cir. 1975) (en banc); *Singleton v. Vance County Board of Education*, 501 F.2d 429, 432–33 (4th Cir. 1974) (Winter, J., concurring and dissenting); *Fine v. City of New York*, 529 F.2d 70, 76 (2d Cir. 1975) (assumed without deciding); *cf. Cardinale v. Washington Technical Institute*, 163 U.S.App.D.C. 123, 500 F.2d 791 (1974) (§ 1983

"person" requirement and § 1331 suits against the District of Columbia); *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1159–62 (9th Cir. 1976) (en banc) (§ 1983 "person" requirement does not bar § 1981 suit against a county). A thoughtful discussion of the interaction of § 1983 and 28 U.S.C. § 1331 can be found in *Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal.1974).

9. Sections 1985(1) and (2) are by their terms inapplicable to this case.

secured by the Constitution and laws by denying her the right to seek public employment without discrimination on account of sex (Section 1983) and have conspired to deprive her of equal protection of the laws by failing to accord her equal treatment and consideration for public employment free of discrimination based on sex (Section 1985(3)). Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343, and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs. Back pay and damages, compensatory and punitive, are sought against the City of Portland, the School Committee, and all individual defendants in their official capacities, and against defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities. Count III does not request either declaratory or injunctive relief. Defendants have moved to dismiss Count III for lack of jurisdiction and for failure to state a claim upon which relief can be granted on a variety of grounds:

(1) Plaintiff's claims under Sections 1983 and 1985(3) are barred by the applicable statute of limitations;

(2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* provides the exclusive judicial remedy for claims of sex-based employment discrimination, preempting a Section 1983 action;

(3) Defendants are not subject to liability for damages under Sections 1983 and 1985(3);

(4) Section 1983 does not reach discrimination solely on the basis of sex;

(5) Section 1985(3) does not reach discrimination solely on the basis of sex.

Each of the foregoing defenses will be separately considered.[10]

### A.

#### *The Statute of Limitations*

Defendants contend that plaintiff's Section 1983 and 1985(3) claims are barred by the statute of limitations.

 No statute of limitations is specified in either Section 1983 or Section 1985(3). Under such circumstances, it is established that the Court must look to state law for the applicable limitation period. *Gonzalez v. Santiago,* 550 F.2d 687 (1st Cir. 1977); *Still v. Nichols,* 412 F.2d 778 (1st Cir. 1969); *Johnson v. Dailey,* 479 F.2d 86 (8th Cir.), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973); *Holden v. Boston Housing Authority,* 400 F.Supp. 399 (D.Mass.1975); *Sims v. Order of United Commercial Travelers of America,* 343 F.Supp. 112 (D.Mass.1972). *Cf. Runyon v. McCrary,* 427 U.S. 160, 180, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Dyer v. Eastern Trust and Banking Co.,* 336 F.Supp. 890, 905 (D.Me.1971). The state statute to be applied is the one which "best effectuates the federal policy involved" and "bears the closest resemblance to the federal cause of action" asserted. *Dyer v. Eastern Trust and Banking Co., id.* at 906.

Plaintiff asserts that the appropriate Maine statute of limitations is the general six-year statute of limitations for civil actions (14 M.R.S.A. § 752). Plainly, however, the analogous state statute of limitations is that contained in the Maine Human Rights Act (5 M.R.S.A. § 4552 *et seq.* (1973 Supp.)). That Act expressly provides that "[t]he opportunity for an individual to secure employment without discrimination because of . . . sex . . . is recognized as and declared to be a civil right." 5 M.R.S.A. § 4571. This civil right—to be free from sex-based employment discrimination—is the very foundation of plaintiff's claims under Sections 1983 and 1985(3), and the Maine statute creating this right obviously bears the "closest resemblance" to the federal cause of action asserted by plaintiff. *Cf. McDonald v. Boslow,* 363 F.Supp. 493, 494–95 (D.Md.1973); *McIver v. Russell,* 264 F.Supp. 22, 31–32 (D.Md.1967).

---

**10.** Although defendants' motions to dismiss assert a variety of other grounds, the Court will address only those contentions which have been pressed in defendants' briefs or at oral argument. All others are considered to have been waived.

The Maine Human Rights Act currently provides that any action filed under the Act "shall be commenced not more than 2 years after the act of unlawful discrimination complained of." 5 M.R.S.A. § 4613(2)(C) (1977 Supp.). Until October 1, 1975 the limitation period under the Maine statute was one year. 5 M.R.S.A. §§ 4613(2)(C), 4621 (1973 Supp.). The instant action was commenced in March 1975, and the first act of discrimination is alleged to have occurred in October 1973. It is not necessary, however, for the Court to determine whether the one-year or two-year limitation period is applicable, because plaintiff has alleged a pattern and practice of unlawful sex-based discriminatory activity by defendants continuing at least to the date of the second amended complaint. *Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378, 1383 (E.D.Va.1974); *Dupree v. City of Chattanooga,* 362 F.Supp. 1136, 1139 (E.D.Tenn.1973); cf. *Williams v. Norfolk & Western Railway Co.,* 530 F.2d 539, 542 (4th Cir. 1975) (statute of limitations for Section 1981 action inapplicable when discrimination is continuing).

The Court holds that plaintiff's claims under Sections 1983 and 1985(3) are not barred by the statute of limitations.

## B.

### *Title VII as Preempting a Section 1983 Action*

Defendants contend that Title VII provides the exclusive judicial remedy for sex-based employment discrimination, preempting a Section 1983 action.

The Supreme Court has twice recently considered the availability of a companion civil rights statute, 42 U.S.C. § 1981, as furnishing an alternative remedy to Title VII. In *Johnson v. Railway Express Agency, supra,* the Court unanimously held that in the context of private employment "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Id.* 421 U.S. at 461, 95 S.Ct. at 1721. *See also Alexander v. Gardner-Denver Co.,* 415 U.S.

36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (". . . the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes"). In *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Court held, however, that Section 717 of the Civil Rights Act of 1964, as added by Section 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, provides the exclusive judicial remedy for claims of discrimination in federal employment.

In *Brown,* the Court used a two-pronged test in determining the issue of exclusivity—an examination both of the legislative history and of the structure of the statute itself. Applying this analysis to the extension of the coverage of Title VII to State and local governments by the 1972 Amendments, it is clear that Title VII does not preempt the right of an aggrieved State or local government employee to pursue his independent remedy under the older Section 1983.

First, the legislative history of the 1972 Amendments explicitly affirms the intent of Congress to reserve to State and local government employees all existing remedies at law, specifically including claims under Section 1983:

In establishing the applicability of Title VII to State and local employees, *the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.* . . . Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination. . . . The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

. . . Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternate administrative remedy to the existing prohibition against discrimination perpetuated "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

H.R.Rep.No.92–238, 92d Cong., 2d Sess., 1972 U.S.Code & Admin.News 2137, 2154. (emphasis supplied) This is in distinct contrast to the legislative history of Section 717, which, as the Supreme Court pointed out in *Brown,* disclosed a congressional intent not to supplement preexisting judicial remedies but to provide an exclusive judicial remedy where no effective remedy had theretofore existed. *Brown v. General Services Administration, supra* at 828–29, 96 S.Ct. 1961.

Second, the structure of the 1972 Amendments to Title VII extending the coverage of Title VII to State and local governments confirms the conclusion that Congress intended to allow State and local government employees to assert independently their rights under both Title VII and Section 1983. In extending the coverage of Title VII to State and local government employees, Congress merely deleted the exemption of these workers previously contained in the statute. *See* note 6 *supra.* They were thus granted the full panoply of rights conferred by Title VII upon private sector employees. This again contrasts with the remedial scheme set forth in Section 717, which the Court in *Brown* found to have established a comprehensive system of administrative and judicial remedies for federal employment discrimination and to constitute a balanced and complete whole totally independent of the earlier provisions of Title VII dealing with private employees. *Id.* at 829–33, 96 S.Ct. 1961.

The Court holds that Title VII does not preempt a separate and independent cause of action under Section 1983.

C.

*Liability of Defendants for Damages Under Sections 1983 and 1985(3)*

Defendants seek dismissal of Count III on the ground that they are not subject to liability for damages under Sections 1983 and 1985(3).

To the extent that Count III seeks compensatory and punitive damages, and not declaratory or injunctive relief, it is clear that it must be dismissed as against the City of Portland, the School Committee and the individual defendants in their official capacities.[11] *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) have established that a municipal corporation is not a "person" within the meaning of the Civil Rights Acts, whether money damages or equitable relief is sought. *Cf. Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Similarly, the finances and affairs of the School Committee are so intimately connected with those of the City, *see* Part I(A)(2), *supra,* that the School Committee cannot be considered to constitute a "person," independent of the City, against which a claim for compensatory and punitive damages may be asserted under Sections 1983 and 1985(3). *See Monell v. Dept. of Social Services of the City of New York,* 532 F.2d 259, 262–64 (2d Cir. 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976) (en banc); *Adkins v. Duval County School Board,* 511 F.2d 690 (5th Cir. 1975); *Singleton v. Vance County Board of Education,*

---

11. The Court reserves decision, however, on the motions to dismiss Count III filed by the School Committee and the individual defendants in their official capacities to the extent that Count III seeks back pay, pending the Supreme Court's decision in *Monell v. Department of Social Services of the City of New York,* 532 F.2d 259 (2d Cir. 1976), *cert. granted,*

429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977). The Supreme Court granted certiorari in *Monell* solely on the question whether "local governmental officials and local independent school boards [are] 'persons' within the meaning of 42 U.S.C. § 1983 when equitable relief in nature of back pay is sought against them in their official capacities."

501 F.2d 429 (4th Cir. 1974); *Strickland v. Inlow*, 485 F.2d 186, 191 (8th Cir. 1973), *rev'd on other grounds sub nom. Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *But see Aurora Educ. Ass'n v. Board of Education*, 490 F.2d 431 (7th Cir. 1973), *cert. denied*, 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974). And insofar as Count III seeks to recover damages from the individual defendants in their official capacities, they are plainly not subject to liability, as any recovery would be taken from the municipal treasury. *Westberry v. Fisher*, 309 F.Supp. 12, 18–20 (D.Me.1970); *Monell v. Dept. of Social Services of the City of New York, supra* at 264–67; *Muzquiz v. City of San Antonio, supra* at 500–01; *Hayes v. Cape Henlopen School District*, 341 F.Supp. 823, 829 (D.Del.1972); *Patton v. Conrad Area School District*, 388 F.Supp. 410, 417 (D.Del.1975). *See The Supreme Court, 1972 Term*, 87 Harv.L.Rev. 1, 258–59 (1973). *See also Gay Students Organization of the University of New Hampshire v. Bonner*, 509 F.2d 652, 655 n. 2 (1st Cir. 1974).

It is equally clear, however, that Count III states a viable claim for damages against defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities. Indeed, defendants appear to concede that plaintiff has sufficiently alleged bad faith and "malicious intent" on the part of these defendants to overcome, insofar as a motion to dismiss is concerned, the defense of qualified immunity to which they are entitled under *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *See also Gaffney v. Silk*, 488 F.2d 1248 (1st Cir. 1973).

The Court holds that the damage claims in Count III must be dismissed as against the City of Portland, the School Committee, and all the individual defendants in their official capacities, but that Count III sufficiently states a claim for damages against defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities.[12]

## D.

### *Sex-Based Employment Discrimination as Giving Rise to a Cause of Action Under Section 1983*

Defendants contend that Section 1983 does not reach discrimination solely on the basis of sex.

Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants argue that Count III fails to state a cause of action under Section 1983 because it does not allege that plaintiff has been deprived of any "rights, privileges, or immunities secured by the Constitution and laws." The contention is that Section 1983 creates no new substantive rights, *see Mitchum v. Foster*, 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), and that the right to be free from sex discrimination in employment is not a right "secured by the Constitution and laws." Plainly, however, there exists a basic constitutional right to be free from discrimination based upon sex. *See, e. g., Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct.

---

12. Inasmuch as the damage claims in Count III have been dismissed as against the City of Portland, the School Committee, and the individual defendants in their official capacities, the Court need not reach defendants' contentions that any claims for damages against these defendants are barred by the Eleventh Amendment or the doctrine of sovereign immunity. Furthermore, the Civil Rights Attorneys' Fees Awards Act of 1976, Pub.L. 94–559 (Oct. 19, 1976), 42 U.S.C. § 1988 (Dec. 1976 Supp.) moots defendants' additional argument that an award of attorneys' fees is not authorized under Sections 1983 and 1985(3). That Act specifically authorizes a court, in its discretion, to award reasonable attorneys' fees to the prevailing party in Section 1983 and 1985(3) actions. The Act has been held applicable to cases pending at the time of its passage. *Rodriguez v. Jimenez*, 551 F.2d 877 (1st Cir. 1977).

1021, 51 L.Ed.2d 270 (1977); *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). As a right secured by the Constitution, it may be enforced in an action brought under Section 1983. *Mitchum v. Foster, supra; Brenden v. Independent School District 742*, 477 F.2d 1292, 1296 (8th Cir. 1973). Indeed, at least two district courts have explicitly found that the Fourteenth Amendment, as enforced by Section 1983, forbids discrimination in employment on the basis of sex. *Harbert v. Rapp*, 415 F.Supp. 83, 86 (W.D. Okla.1976); *Schaefer v. Tannian*, 394 F.Supp. 1128, 1134 (E.D.Mich.1974).

■ The Court holds that Count III states a cause of action under Section 1983 for discrimination in employment on account of sex.

### E.

### *Sex-Based Employment Discrimination As Giving Rise to a Cause of Action Under Section 1985(3)*

Defendants contend that Section 1985(3) does not reach sex-based discrimination. They argue that only racially-motivated conspiracies fall within the scope of that section.

Section 1985(3) provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby

another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The leading Supreme Court case defining the scope of Section 1985(3) is *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *Griffin* established four elements necessary to state a cause of action under Section 1985(3):

To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798.

Writing for the Court in *Griffin*, Justice Stewart went on to observe that Section 1985(3) was not to be transformed into a "general federal tort law." Rather, he stressed that an "invidiously discriminatory motivation" was a necessary element of a Section 1985(3) cause of action:

The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Id.* at 102, 91 S.Ct. at 1798 (emphasis in original). In a footnote, Justice Stewart then specifically noted that it was unneces-

sary, on the facts of *Griffin* (which involved a racially-motivated conspiracy), to decide whether a conspiracy motivated by an invidiously discriminatory intent other than racial bias would be actionable under Section 1985(3). *Id.* at 102 n. 9, 91 S.Ct. 1790.

■ While there is a split of authority on the question of whether a nonracial class-based invidiously discriminatory animus is sufficient for a cause of action under Section 1985(3), the great majority of federal courts have rejected the notion that the statute reaches only conspiracies motivated by racial bias. Thus, a majority of the decisions which have directly addressed the issue presented by this case have concluded that Section 1985(3) covers sex-based conspiracies. *Reichardt v. Payne*, 396 F.Supp. 1010, 1018 (N.D.Cal.1975); *Pendrell v. Chatham College*, 370 F.Supp. 494, 501 (W.D.Pa. 1974); *Stern v. Massachusetts Indemnity & Life Ins. Co.*, 365 F.Supp. 433, 443 (E.D.Pa. 1973). *See also Johnson v. City of Cincinnati*, 450 F.2d 796 (6th Cir. 1971). *Contra Knott v. Missouri Pacific Railroad Co.*, 389 F.Supp. 856 (E.D.Mo.1975), *aff'd*, 527 F.2d 1249 (8th Cir. 1975) (claims under Section 1985(3) not appealed); *Baker v. Stuart Broadcasting Co.*, 8 FEP Cases 1240 (D.Neb. 1974), *aff'd*, 505 F.2d 181 (8th Cir. 1974) (declining to pass on district court's holding that Section 1985(3) does not reach sex-based conspiracies). Similarly, every appellate court which has faced the issue has concluded that the scope of Section 1985(3) is not limited to racially-motivated conspiracies: class-based animus sufficient to support a Section 1985(3) cause of action has been found to exist in conspiracies motivated by invidiously discriminatory intent directed toward supporters of a particular political candidate, *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) and *Means v. Wilson*, 522 F.2d 833, 839–841 (8th Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976); voters who were deceived as to the actual effect of their vote, *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), *cert. denied*, 417 U.S. 910, 94

S.Ct. 2607, 41 L.Ed.2d 214 (1974); persons critical of government officials and policies, *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); persons deprived of equal employment opportunities because of religious and national origin, *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973); white individuals harassed by police, *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972); white persons who advocate racial equality in employment opportunities, *Richardson v. Miller*, 446 F.2d 1247 (3d Cir. 1971); member of group of environmentalists or tax equity group, *Westberry v. Gilman Paper Company*, 5 Cir., 507 F.2d 206, *opinion withdrawn and vacated as moot*, 507 F.2d 215 (5th Cir. 1975). *See Lopez v. Arrowhead Ranches*, 523 F.2d 924, 927 (9th Cir. 1975) (assuming without deciding that legality of residence status creates a class cognizable under *Griffin*). *See also Local No. 1 (ACA) v. International Brotherhood of Teamsters*, 419 F.Supp. 263 (E.D.Pa.1976) (class expressing views contrary to union leadership); *Bradley v. Clegg*, 403 F.Supp. 830 (E.D.Wisc.1975) (class of striking teachers); *Brown v. Villanova University*, 378 F.Supp. 342 (E.D.Pa.1974) (class of students exercising First Amendment rights through membership in certain organization); The Supreme Court, 1970 Term, 85 Harv.L.Rev. 40, 103 (1971).

■ This Court is persuaded that the result reached by the foregoing cases is consistent with the approach of the Supreme Court "to other Reconstruction civil rights statutes in [recent] years . . . to 'accord [them] a sweep as broad as their language.'" *Griffin v. Breckenridge, supra* 403 U.S. at 97, 91 S.Ct. at 1796. Unlike Sections 1981 and 1982 of Title 42, the language of Section 1985(3) does not make specific reference to race.[13] Accordingly, this Court joins the clear majority of federal courts in concluding that in order to come within Section 1985(3) it is not necessary that plaintiff be the subject of racial discrimination and that Section 1985(3) does reach sex-based discrimination.

**13.** Sections 1981 and 1982 make specific reference to race and therefore have not been extended to nonracial discrimination. *See, e. g.,*

*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

 The Court holds that Count III states a cause of action under Section 1985(3) for conspiracy to deprive plaintiff of the equal protection of the laws by denying her equal employment opportunity because of her sex.[14]

## IV.

### Conclusion

In accordance with the foregoing, it is ORDERED as follows:

(1) Defendants' motions to dismiss are GRANTED to the following extent:

A. Count I of the second amended complaint is DISMISSED as against all the individual defendants other than defendant Bartlett;

B. The prayers for compensatory and punitive damages in Count I of the second amended complaint are STRICKEN;

C. Count II of the second amended complaint is DISMISSED as against all defendants;

D. The claims for compensatory and punitive damages in Count III of the second amended complaint are DISMISSED as against the City of Portland, the Portland Superintending School Committee, and all the individual defendants in their official capacities.

(2) In all other respects, defendants' motions to dismiss are DENIED.

## APPENDIX A

42 U.S.C. § 2000e et seq. provides in relevant part:

§ 2000e.

For the purposes of this subchapter—

(a) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trust, unincorporated organizations, trustees, trustees in bankruptcy, or receivers.

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

. . . . .

(f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be

---

14. Defendants also contend that even if Section 1985(3) reaches sex-based discrimination, no "conspiracy" can be shown because the defendants collectively constitute plaintiff's employer, a single corporate entity, see *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *Cole v. University of Hartford*, 391 F.Supp. 888, 892 (D.Conn.1975). Whatever merit there may have been to this argument insofar as it addressed the capacity to conspire of the City of Portland, the School Committee, and the individual defendants in their official capacities, with the dismissal of Count III as against these defendants, only defendants Bartlett, Tupper, Sottery and Raynolds in their individual capacities remain subject to liability for Section 1985(3) damages. No reason appears why plaintiff is not entitled to establish that these four defendants, as individuals, were parties to the sex-based conspiracy which she alleges. *See Cole v. University of Hartford, supra* at 893; *Girard v. 94th Street and Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

(g) The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

(h) The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management [*sic*] Reporting and Disclosure Act of 1959, and further includes any governmental industry, business, or activity.

§ 2000e–2.

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

. . . . .

(h) Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29.

§ 2000e–3.

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

§ 2000e–5.

. . . . .

(b) Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. . .

(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. . . .

. . . . .

(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(f)(1) . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . . .

. . . . . .

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

. . . . .

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

. . . . .

(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.