Gayle J. HINES, Plaintiff,

v.

BOARD OF EDUCATION OF COVINGTON, KENTUCKY, et al., Defendants.

Civ. A. No. 77–157.

United States District Court,
E. D. Kentucky,
Covington Division.

July 3, 1980.

---

Bernard J. Blau, Newport, Ky., for plaintiff.

Richard Nelson, Louis DeFalaise, Covington, Ky., for defendants.

BERTELSMAN, District Judge.

## FACTS

This is a federal civil rights action by a non-tenured teacher who claims her contract was not renewed under circumstances which entitled her to a due process hearing.[1]

The plaintiff Gayle Hines is a resident of the State of Ohio and was employed by the Covington School System as an untenured teacher during the school year 1973–74. The defendant Board of Education of Covington, Kentucky is authorized pursuant to

---

1. The complaint also alleged that plaintiff was not renewed because of her exercise of First Amendment rights, but this ground was later abandoned.

KRS 160.290 to control and manage the public school system in Covington, Kentucky. The defendant Bert Bennett served as superintendent of the Covington School System at the time the plaintiff's contract was not renewed. The defendant Gary Blade served as superintendent of the Covington School System at a time the plaintiff requested a hearing on the non-renewal of her contract. The remaining defendants were members of the Covington School Board either at the date of the contract non-renewal or the request for a hearing.

In March of 1974, after accusations of sexual misconduct and illegal drug use were made against the plaintiff, the defendant Superintendent Bert Bennett requested the plaintiff's resignation. The request was refused by the plaintiff. The charges against plaintiff became public, during these events. In May of 1974, at a meeting of the defendant School Board, the Board voted not to renew the plaintiff's contract. Plaintiff alleges that the charges, which she claims were false, were, at least in the public eye, the reason for the unfavorable personnel decision. Plaintiff contends that the Superintendent and Board were responsible for the publicity. The defendants deny responsibility. *See Board of Regents v. Roth*,[2] and *Owen v. City of Independence*.[3] Thereafter, the plaintiff twice requested hearings before the Board and was refused.

Three-and-a-half years later, on December 6, 1977, the plaintiff filed suit in this court seeking relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3) alleging deprivation of rights granted through the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The gravamen of the complaint is that plaintiff was wrongfully denied a hearing to clear her name, and therefore is entitled to reinstatement until such hearing is held, as well as to compensatory and punitive damages. Defendants duly raised the defense that the action is barred by the statute of limitations.

## BACKGROUND

Since the Federal Civil Rights Acts fail to provide a statute of limitations for actions brought pursuant to them, it has been held that the federal courts should apply the state statute of limitations which is most analogous to the civil rights action.[4]

The principle that the statute of limitations to be applied is the most analogous state statute is easy of statement, but frequently difficult of application, as the instant case demonstrates. Defendants here make a forceful argument that the statute of limitations to be applied is the Kentucky one-year statute for actions sounding in libel and slander.[5]

On the other hand, the plaintiff argues with equal vigor that, since the plaintiff's claim involves an employment situation, the most analogous statute is the five-year statute for actions based on a contract not in writing.[6] The plaintiff makes an alternative argument that the provisions of KRS 413.120(2) setting five years as the limitations period for "an action upon a liability created by a statute" should be applicable.

Scholarly comment on the statute of limitations problem in civil rights actions has been uniformly critical of the failure of the Supreme Court of the United States to prescribe any definitive standards for making the analogy to the state statute of limitations. This failure has led to widespread confusion, uncertainty, and a lack of uniformity in the lower courts. As the scholars point out, this unfortunate situation has involved a waste of judicial time, but even

---

**2.** 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**3.** 560 F.2d 925 (8th Cir. 1977) rev'd on other grounds 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1114 (1980).

**4.** *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975);

*O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); Annotation, 45 A.L.R.Fed. 548.

**5.** KRS 413.140.

**6.** KRS 413.120.

more importantly, has proved highly prejudicial to the litigants involved, both plaintiffs and defendants.[7]

█ If this court were writing on a clean slate in this matter, it would be inclined to view the need for certainty and uniformity as an overwhelming consideration and, following the suggestions of the commentators, adopt a single state statutory analogue for all federal civil rights actions. A suitable candidate would be the state limitations statute for an action upon a liability created by statute.[8] This is the solution adopted by the Ninth Circuit Court of Appeals.[9]

## SIXTH CIRCUIT CASES

Whatever may be said for such an approach to the problem, however, it would be clearly contrary to the decisions of the Sixth Circuit Court of Appeals on the subject, and this court is not free to adopt it. The Sixth Circuit Court has used the state statute of limitations for a cause of action based on statute in at least two cases,[10] but these involved claims of alleged discrimination based on sex or race, which was a type of action unknown to the common law.

In other cases, the Sixth Circuit Court has applied other state statutes of limitations, applicable to types of claims which it has believed to be more similar to the particular federal civil rights action. Thus, in *Austin v. Brammer,*[11] the court applied the

Ohio statute of limitations which applied to actions for false arrest and false imprisonment, where the federal complaint alleged a false conviction due to the perjured testimony of police officers. And in *Carmicle v. Weddle,*[12] the court applied the Kentucky one-year statute for malicious prosecution to a case based on an alleged conspiracy to deprive plaintiff of his civil rights by causing unfounded criminal prosecutions to be instituted in a state court. Therefore, the Sixth Circuit decisions dictate that this court may not adopt across the board, in federal civil rights cases, the Kentucky five-year limitations period for a liability based on statute, as it would otherwise be inclined to do. Rather, a more detailed analysis must be made in each case to determine if some other state cause of action is more analogous to the federal cause of action.

## FACTORS TO BE CONSIDERED

█ Trial courts have been provided with little guidance in the methods to be used in making the required analysis. This court believes and holds that in implementing the Sixth Circuit approach the two primary factors to be considered in attempting to analogize a federal civil rights claim to a state claim for the purpose of selecting an appropriate statute of limitations are the interest of plaintiff sought to be protected, and the operative facts comprising the claim. Giving primary emphasis to these two factors will give as much certainty and predictabili-

---

7. *See, e. g.* Annotation, 45 A.L.R.Fed. 548; Note, *Statutes of Limitations in Federal Civil Rights Litigation,* 1976 Arizona State L.J. 97; Note, *The Development of § 1981 as a Remedy for Racial Discrimination in Private Employment,* 7 Harv. Civil Rights—Civil Liberties L.Rev. 56 (1972); Note, *Limitation Borrowing in Federal Courts,* 77 Mich.L.Rev. 1127 (1979); Note, *A Call for Uniformity: Statutes of Limitation in Federal Civil Rights Actions,* 26 Wayne L.Rev. 61 (1979). Congress has also been criticized for failing to prescribe a statute of limitations. Some state legislatures have enacted statutes prescribing a limitations period for federal civil rights actions. *See* A.L.R. Fed. Annotation, *supra.*

8. In Kentucky a five-year period for this kind of action is prescribed by KRS 413.120(1). Another possibility would be the so-called "catchall" statute prescribing a limitations period for

actions to which no other statute of limitations is applicable. KRS 413.160 (10 years).

9. *Strung v. Anderson,* 452 F.2d 632 (9th Cir. 1971); *Bergschneider v. Denver,* 446 F.2d 569 (9th Cir. 1971); *Mills v. Small,* 446 F.2d 249 (9th Cir. 1971); *Mason v. Schaub,* 564 F.2d 308 (9th Cir. 1977). Apparently, the other circuits follow much the same approach to the problem as that of the Sixth Circuit, which is discussed below. *See* authorities in note 7, *supra.*

10. *Garner v. Stephens,* 460 F.2d 1144 (6th Cir. 1972); *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir. 1975).

11. 555 F.2d 142 (6th Cir. 1977).

12. 555 F.2d 554 (6th Cir. 1977).

ty as possible in the face of existing case law, while yet affording due deference to the state policies involved.[13]

## INTEREST PROTECTED

In support of her argument that the five-year limitations period for actions based on contracts not in writing should be applied, plaintiff cites the decisions of the Supreme Court of the United States, which collectively establish the principle that a civil rights suit for deprivation of due process in failure to renew a non-tenured teacher's contract, must be based on a legitimate expectancy of reemployment.[14] Therefore, she contends, the interest she seeks to protect is contractual.

On the other hand, defendants argue that, although the existence of the employment relation and the legitimate expectation of reemployment is a condition precedent to the bringing of an action of this kind, a close analysis of the cases demonstrates that the interest being protected is the right to vindicate one's reputation. This argument is supported by the fact that, if the charges are not made public and the plaintiff's good name is not impugned, there is no right to bring the federal civil rights action, even though the legitimate expectancy of reemployment may be present.[15] The rationale of the court in *Owen v. City of Independence,*[16] makes this especially clear.

"In determining whether a government employer has deprived its employee of a liberty interest in the termination of employment, the crucial issue is whether the government employer, in connection with the termination of government employment, including a refusal to rehire or reemploy, makes a charge which might seriously damage the employee's standing and reputation in the community."

In support of this statement, the court quoted the Supreme Court of the United States in *Codd v. Velger,*[17] as follows:

"Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop*, the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.' 408 U.S., at 573, 92 S.Ct. at 2707. 'The purpose of

---

**13.** Some of the more recent commentaries suggest that a federal civil rights action is a unique creature which springs fully-formed from the mind of Congress. *See* Note, *Statutes of Limitations in Federal Civil Rights Litigation,* 1976 Arizona State L.J. 97, 113. This view is historically dubious, however. Historically, it is more probable that the civil rights statutes were regarded as providing federal *remedies* for state causes of action, which, as a practical matter, could not be pursued in state courts because of discrimination, prejudice, or some other invidious reason. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Madison v. Wood,* 410 F.2d 564, 566 (6th Cir. 1969). That state interests are involved cannot be denied. Thus the rule adopting the analogous state statute of limitations is ultimately based on the Rules of Decision Act (28 U.S.C. § 1652), which looms large in the federal courts' obligation to apply state law in diversity cases. *See* Arizona State L.J. Note, *supra,* at 102. 42 U.S.C. § 1988, also provides in essence that state law shall be used to fill any gaps in the provisions of the federal civil rights statutes. *See also* discussion in *Johnson v. Railway Express Agency,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975), concerning application of state tolling rules along with the state statutes of limitation.

It must be admitted that use of the state statute of limitations for actions based on statute would derogate to some extent from the state policy of prescribing relatively short statutes of limitations for libel and slander, malicious prosecution, et cetera. However, it would still be a state statutory rule being adopted, and the compelling need for certainty would be satisfied.

**14.** *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *Cf. Paul v. Davis,* 424 U.S. 693 (1976) and cases cited in note 18, *infra.*

**15.** *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

**16.** 560 F.2d 925 (8th Cir. 1977), reversed on other grounds, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1114 (1980).

**17.** 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), holding that failure to plead the falsity of the derogatory matter, concerning which the due process hearing is sought, is a fatal defect.

such notice and hearing is to provide the person an opportunity to clear his name,' *id.*, n.12. But if the hearing mandated by the Due Process Clause is to serve any useful purpose, *there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation.*

\* \* \* \* \* \*

"Only if the employer creates and disseminates *a false and defamatory impression* about the employee in connection with his termination is such a hearing required." (emphasis added).

█ A further repudiation of the plaintiff's argument that this action should be considered analogous to a state action for breach of an implied contract is found in that the state law is clear that a non-tenured teacher has no contractual right to reemployment, express or implied. Indeed, if the failure to renew the contract or grant tenure is not based on an exercise of First Amendment rights, does not involve invidious discrimination of some kind, and is not accompanied by charges tending to impugn the reputation of the teacher, there is no right even to a statement of reasons for the adverse action, much less a right to a due process hearing.[18]

█ Therefore, this court must conclude that, although an action for deprivation of due process [19] in connection with failure to renew a non-tenured teacher's contract[20] cannot be brought in the absence of the employment relation and a legitimate expectancy of reemployment, the primary interest which the due process right serves to protect in this context is the interest in one's reputation, and not a contractual interest.

## OPERATIVE FACTS

The second factor deemed applicable by this court is even more weighty than the first, in the light of the need for certainty. This is the consideration that the operative facts giving rise to the federal cause of action, if any, in this case, and the issues to be tried therein, would be virtually identical to a state action for slander. The issues in the federal trial would be the relationship of the parties, the publication of the charges, the truth or falsity of the charges, the existence of good faith or privilege, the existence of ill-will or malice, and the same type of damages issues as are involved in a slander action, including punitive damages. The plaintiff's status as a non-tenured teacher is not in issue. The federal resolution of these issues might not be exactly the same as in a state slander action, but there would be very little difference in the evidence offered.

## CONCLUSION

The court need not decide in this case what the result would be if the interest to be protected were analogous to one state cause of action, but the evidence would be more appropriate to another cause of action with a different limitations period. Under existing law, choosing an appropriate statute of limitations in such a case would be a difficult and chancy endeavor.

Other difficult cases may readily be envisioned. Suppose, for example, that the plaintiff in the case at bar were one who claimed de facto tenure by reason of the "common law" of the particular educational institution. The contractual aspects of the case would be much more crucial. Evidence

---

18. *Ryan v. Aurora City Board of Education,* 540 F.2d 222 (6th Cir. 1976). *See also Plummer v. Board of Regents,* 552 F.2d 716 (6th Cir. 1977); *Wells v. Board of Regents,* 545 F.2d 15 (6th Cir. 1976). One court has said quite clearly that, in these cases where non-tenured teachers are seeking review of non-renewal decisions,

"The right sought to be vindicated is not a contractual one, nor could it be since no *right* to reemployment existed." *Pred v. Board of Public Instruction,* 415 F.2d 851, 856 (5th Cir. 1969).

19. It is assumed in this statement that the reason the due process hearing is sought is to rebut charges made against the employee, which have become public, as in the case at bar.

20. Or the discharge of other public employees who serve at will. *Cf. Owen v. City of Independence, supra.*

might have to be heard on the issue of the existence of the de facto tenure, in addition to evidence concerning the charges. Such cases are not at all rare.[21]

In such a case, would the slander statute used in the case at bar still prevail or would the tenure issue tilt the scale toward one of the limitation statutes designed for contract actions? This also need not be decided at this time. Such contingencies, however, further illustrate the need for the higher courts to prescribe a test for selecting an analogous state statute, which is comprehensive, certain and predictable. Failing receipt of such guidance, an appeal will be required in every close case, and much judicial and attorney time will be wasted.

Under existing law, however, the case at bar, is analogous to the state cause of action for slander. Therefore, the court holds, pursuant to the controlling Sixth Circuit cases sited above, that it is barred by the one-year statute of limitations provided by KRS 413.140.

A judgment dismissing the complaint herein has this day been entered.

---

21. This court has several such cases on its docket at this time, in which the statute of limitations is not an issue. *See also Soni v. Board of Trustees*, 513 F.2d 347 (6th Cir. 1975). In one case, not involving a limitations issue, this court had to determine the contractual expectations of a parttime college faculty member, whether she had been terminated because of First Amendment rights, and whether she was entitled to a due process hearing to rebut charges of "unprofessionalism." One can only speculate as to the appropriate statute of limitations to be applied in such a case, if limitations had been an issue.