Delbert SMALL, Plaintiff,

v.

The INHABITANTS OF THE CITY OF BELFAST and James Murphy, Defendants.

Civ. 80-1125–B.

United States District Court, D. Maine.

Sept. 23, 1982.

---

Stephen P. Sunenblick, Portland, Maine, for plaintiff.

Francis C. Marsano, Belfast, Maine, Peter J. DeTroy III, Portland, Maine, for defendants.

## MEMORANDUM OPINION AND ORDER

CYR, District Judge.

The complaint alleges a deprivation of civil rights under 42 U.S.C. § 1983 and a violation of the due process clause of the fourteenth amendment by the defendants acting under color of state law. The defendants assert that the cause of action brought under section 1983 is barred by the applicable statute of limitations and that the independent cause of action asserted under the fourteenth amendment fails to state a claim upon which relief may be granted.

Jurisdiction is invoked under title 28 United States Code, sections 1331 (federal question) and 1343 (civil rights).

The complaint alleges that the plaintiff had been a *special* officer of the City of Belfast Police Department and a security guard employed at the Waldo County General Hospital since April 11, 1974. On November 5, 1975 he was commissioned a *reserve* police officer of the City of Belfast Police Department. In February, 1976 the defendant James H. Murphy, Belfast City Manager, directed the chief of police to obtain plaintiff's resignation as a *reserve* police officer, because some Belfast citizens had expressed distrust of the plaintiff, who had been the subject of a Belfast police investigation in 1974 concerning a stolen snowplow.

The plaintiff resigned his commission as a *reserve* police officer on or about February 4, 1976, based on alleged assurances of the chief of police that the resignation would not affect plaintiff's status as a *special* officer. Thereafter, the defendant Murphy informed plaintiff's supervisor, Waldo County General Hospital Administrator Arthur S. Upton, that the plaintiff had resigned as a *reserve* officer because he had been found in possession of a stolen snowplow. Defendant Murphy also notified the hospital that the plaintiff's status as a *special* officer would be revoked. At the request of the defendant Murphy, Upton submitted a written request that the plaintiff be relieved of his duties as a *special* officer assigned to the hospital effective February 9, 1976. Upton also notified the plaintiff that his services at the hospital were terminated effective February 9, 1976.

The plaintiff contends that the revocation of his appointment as a *special* officer and the resulting loss of his employment as a security guard at the hospital were based solely on the representations made by Murphy to Upton and that at no time was the plaintiff afforded an opportunity to contest the allegations of wrongdoing. In addition, plaintiff claims that the representations made by Murphy concerning the stolen snowplow have affected plaintiff's ability to obtain other work in the Belfast area.

Although the complaint does not specify what constitutionally protected interests of the plaintiff may be implicated, it describes a discharge from employment under cir-

cumstances which defamed and stigmatized plaintiff, infringing upon his liberty interest in his reputation. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 633 n.13, 100 S.Ct. 1398, 1406 n.13, 63 L.Ed.2d 673 (1980); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Limerick v. Greenwald,* 666 F.2d 733, 735 (1st Cir. 1981); *Beitzell v. Jeffrey,* 643 F.2d 870, 878 (1st Cir. 1981); *Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 488–89 (1st Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). *Cf. Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Harrington v. United States,* 673 F.2d 7 at 11 (1st Cir. 1982). The due process clause of the fourteenth amendment may entitle plaintiff to a name-clearing hearing in such circumstances. *Id.*

The complaint does not allege an unconstitutional discharge from public employment.

A public employee has a constitutionally protected interest in continued employment where he has a reasonable expectation, arising out of state statute, rules or the contract, that he will continue to be employed.... Thus, ordinarily, one who can be removed only for 'cause' has a constitutionally protected 'property' interest, while one whose job is held 'at will' does not.

*Perkins v. Board of Directors of S.A.D. No. 13,* 686 F.2d 49 at 51 (1st Cir. 1982) (citations omitted). Not all employment contracts create a constitutionally protected "property" interest entailing procedural safeguards, although a state official may nevertheless be subjected to civil liability under state law for infringements upon employment interests. *See Bleeker v. Dukakis,* 665 F.2d 401, 403 (1st Cir. 1981).

The public office of *special* police officer is the creature of title 14 M.R.S.A. section 2362 (1978); it empowered the plaintiff to perform certain police functions as a security guard for the hospital by which he was employed. Plaintiff does not allege that the office of *special* police officer constituted public "employment" by the City of Belfast and neither the hospital nor any person associated with the hospital is a party defendant. There is no allegation that the hospital is affiliated in any way with the City of Belfast. The complaint alleges that "at all times ... plaintiff Small served under and was directly responsible to the administration of the Waldo County Hospital and had no further relationship with the City of Belfast." Complaint at ¶ 5. The complaint further alleges that Small was discharged by the hospital administrator and not by the city manager. Complaint at ¶ 14. Instead, the complaint merely alleges that the conduct of the city manager, consisting of defamatory comments, precipitated the termination of plaintiff's employment as a security guard.

I

## CONSTITUTIONAL CAUSE OF ACTION INDEPENDENT OF § 1983

In *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized an implied right of action under the fourth amendment against federal officials. The First Circuit has stated that "the Court's methodology belies any claim that *Bivens* should be understood as recognizing sweeping federal judicial power to create damages remedies to vindicate constitutional rights." *Kostka v. Hogg,* 560 F.2d 37, 42 (1st Cir. 1977). In *Kostka,* the First Circuit held that there was no implied right of action under the fourteenth amendment against a municipality and its police chief for failure to provide adequate instruction and control of a police officer.

The *Kostka* court so ruled notwithstanding full awareness that two earlier Supreme Court decisions[1] then barred relief under section 1983. Later, in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Su-

---

**1.** *See, e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) [municipal immunity]; *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) [no general duty of police chief to take affirmative action to prevent unconstitutional conduct by officer].

preme Court strengthened the *Kostka* ruling that a right of action under the Constitution would not be implied in such circumstances. *Monell* overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), by holding that municipalities are "persons" subject to suit under section 1983, thus removing a major obstacle to relief under section 1983. In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court further broadened the availability of section 1983 relief against municipalities, holding that "the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983," *id.* at 638, 100 S.Ct. at 1409. As a result, federal courts have become increasingly reluctant to recognize implied rights of action under the Constitution where section 1983 relief is available. *See Pauk v. Board of Trustees,* 654 F.2d 856, 865 (2d Cir. 1981); *Ward v. Caulk,* 650 F.2d 1144, 1147–48 (9th Cir. 1981); *Hearth, Inc. v. Department of Public Welfare,* 617 F.2d 381, 382–83 (5th Cir. 1980); *Owen v. City of Independence,* 589 F.2d 335, 337 (8th Cir. 1978), *rev'd on other grounds,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Turpin v. Mailet,* 591 F.2d 426 (2d Cir. 1979) (*en banc*). *But cf. Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982) [simple negligence of supervisors insufficient to support either § 1983 or *Bivens* claim].

More recently the Supreme Court has allowed *Bivens* actions against *federal* officials. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In *Passman,* the Court implied a right of action under the fifth amendment on a claim of gender-based dismissal brought by a female employee against Congressman Otto Passman. *Id.* at 241–44, 99 S.Ct. at 2274–2276. In *Green,* an action brought in behalf of an inmate who died as the alleged result of the failure on the part of federal prison officials to transfer him to a nonprison hospital during an asthma attack, *id.* 446 U.S. at 16 n.1, 100 S.Ct. at 1470 n.1, the Court held that a *Bivens* cause of action would be implied under the eighth amendment, unless the defendants could establish (1) that there were special circumstances "counselling hesitation in the absence of affirmative action by Congress" or (2) "that Congress has provided an alternative remedy which [Congress] explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18–19, 100 S.Ct. at 1472–1473.

*Green* held that the availability of relief under the Federal Tort Claims Act did not preclude a *Bivens* action, because a *Bivens* action: (1) serves as a more effective deterrent, *id.* at 21 n.6, 100 S.Ct. at 1473 n.6; (2) allows punitive damages, *id.* at 22, 100 S.Ct. at 1473; (3) allows jury trials, *id.* at 22, 100 S.Ct. at 1473; and (4) is dependent on uniform federal principles rather than applicable state law, *id.* at 23, 100 S.Ct. at 1474. *Green* points out that section 1983 actions closely parallel *Bivens* actions, the former involving constitutional violations by *state* officials, the latter, by *federal* officials. *See id.* at 21–25, 100 S.Ct. at 1473–1475. *Green* implicitly counsels that section 1983, not *Bivens,* is the appropriate vehicle for redressing constitutional claims against *state* officials.

Although the First Circuit Court of Appeals has not considered the availability of a *Bivens* action against state officials since *Kostka* and *Monell* were decided, the district courts in the first circuit which have done so have uniformly applied *Kostka,* noting that *Monell* may have altered the reasoning in *Kostka,* but not its result. *See Devasto v. Faherty,* 479 F.Supp. 1069, 1071–72 (D.Mass.1979);[2] *Leite v. City of Providence,* 463 F.Supp. 585, 587 (D.R.I.1978).

There appears little doubt that *Kostka* controls the present case.

---

**2.** The *Devasto* court observed that

*Monell* itself suggests the continued vitality of the holding in *Kostka:* 'Rather than constitutionalize a cause of action against local government that Congress intended to create in 1871, the better course is to confess error and set the record straight, as the Court does today', 436 U.S. at 713, 98 S.Ct. at 2047. (Powell, J., concurring.)

479 F.Supp. at 1071.

## II

## APPLICABLE STATUTE OF LIMITATIONS

Since section 1983 does not itself prescribe a limitations period, the court must determine the most analogous state cause of action and borrow the limitations period prescribed by state law. *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–1795, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Holden v. Commission Against Discrimination,* 671 F.2d 30, 33–34 (1st Cir. 1982); *Hussey v. Sullivan,* 651 F.2d 74 (1st Cir. 1981) (*per curiam*); *Burns v. Sullivan,* 619 F.2d 99, 105–108 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *cf. Carter v. Supermarkets General Corp.,* 684 F.2d 187 (1st Cir. 1982) [§ 1981 action].

Determination of the applicable state statute of limitations requires consideration of four questions: (1) the nature of the federal cause of action . . . ; (2) the analogous state causes of action; (3) the state statutes of limitations for those causes of action; and (4) which of the state statutes of limitations is the most appropriate under federal law. . . .

*Burns v. Sullivan,* 619 F.2d at 105 (citations omitted).

The plaintiff urges the borrowing of the six-year limitations period generally applicable to civil actions brought under Maine law, which states in pertinent part: "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . except as otherwise specifically provided." 14 M.R.S.A. § 752 (1980). The defendants would apply: (1) 14 M.R.S.A. § 753 (1980) [two-year period in actions for libel and slander]; (2) 14 M.R.S.A. § 8110 [two-year period in actions against governmental entity or its employees under Maine Tort Claims Act]; (3) 5 M.R.S.A. § 4613(2)(C) (1979) [two-year period in actions brought under the Maine Human Rights Act]; or (4) Maine Rule of Civil Procedure 80B(b) [30-day period in suits for direct review of administrative action].

Under the analysis in *Burns v. Sullivan, supra,* it is first necessary to consider the "nature of the federal cause of action." 619 F.2d at 105. The complaint charges a violation of due process arising out of the circumstances surrounding the termination of plaintiff's employment as ·a security guard with the Waldo County General Hospital. The plaintiff does not allege a constitutionally protected property interest in continued employment with Waldo County General Hospital, nor does he point to any statutory or common law basis, or allege any factual basis, for finding that he had a contract of employment or that an actual or *de facto* tenure policy existed, *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), such as might substantiate a constitutionally protected property interest.[3] *See Arnett v. Kennedy,* 416 U.S.

**3.** Although the plaintiff was not employed by the city, his appointment as a *special* officer, and its subsequent revocation, were acts of the city and its officials. Nevertheless, the complaint does not assert, nor do the factual allegations point to, the existence of any procedural requirements for the discretionary revocation of the appointment of a special officer by city officials. *Cf. Erdelyi v. O'Brien,* 680 F.2d 61 (9th Cir. 1982) (*per curiam*) [where city official has broad discretion, unrestricted by law, to deny gun licenses to applicants, there is no constitutionally protected property right to such licenses]. Moreover, it does not appear from the complaint that "special officer" status entails any expectation or assurance of continued employment, either with the city or with private employers.

[W]hen a plaintiff under 42 U.S.C. § 1983 supplies facts to support his claim we do not think that *Conley* [*v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ] imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one. . . . [W]hen a complaint omits facts that, if they existed would clearly dominate the case, it seems fair to assume that those facts do not exist.

*O'Brien v. DiGrazia,* 544 F.2d 543, 546 n.3 (1st Cir. 1976). *See also Boynton v. Casey,* 543 F.Supp. 995, 1002–03 (D.Me.1982). ·

Of course, a constitutionally protected *liberty* interest may exist where serious injury to reputation is inflicted in the course of a change in employment status, even where that status was

134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974); *Corrigan v. Donilon,* 639 F.2d 834, 836–37 (1st Cir. 1981). Instead, plaintiff appears to be asserting that the circumstances surrounding his discharge implicate a *liberty* interest in his reputation, entitling him to a name-clearing hearing, as a matter of due process.[4] *See Owen v. City of Independence,* 445 U.S. 622, 633 n.13, 100 S.Ct. 1398, 1406 n.13, 63 L.Ed.2d 673 (1980); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Limerick v. Greenwald,* 666 F.2d 733, 735 (1st Cir. 1981).

The due process claim is predicated on the alleged defamatory conduct of the city manager, which resulted in plaintiff's discharge by the Waldo County General Hospital and damaged "his standing and associations in the community," 445 U.S. at 633 n.13, 100 S.Ct. at 1406 n.13. Defamation by a state official is at the core of the constitutional claim. The most analogous state cause of action is that for defamation (slander). Under Maine law, false statements by an employer, which discredit the competency of an employee, are slanderous *per se.* *See Picard v. Brennan,* 307 A.2d 833, 834 (Me.1973); *Farrell v. Kramer,* 193 A.2d 560, 159 Me. 387 (1963).

There is a two-year limitations period in defamation actions under Maine law. 14 M.R.S.A. § 753. Section 753 specifically governs most intentional torts affecting personal, as distinguished from property, interests, including slander and libel.[5] The First Circuit, in selecting state limitations periods for application in section 1983 actions based on infringements of constitutionally protected nonproperty interests, has borrowed limitations periods applicable to tort actions or actions for injuries to the person. *See Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945 (1st Cir. 1978) [action for warrantless search and seizure, improper arrest, and assault by state officials, controlled by three-year limitations period governing actions for injuries, including nonphysical injuries, to the person, rather than general six-year period applicable to all other civil actions]; *Graffals Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir. 1977) (*per curiam* ) [first amendment violation resulting in discharge from public employment actionable within one-year, tort limitations period]. But where a state *statutory* remedy is governed by its own limitations period, the First Circuit has applied that limitations period to analogous section 1983 claims. *See Holden v. Commission Against Discrimination,* 671 F.2d 30 (1st Cir. 1982) [equal-protection, free-speech and due-process based claims under § 1983, arising out of race-related dismissal from public employment, controlled by six-month limitations periods prescribed in state statutes creating remedies for discrimination and for wrongful discharge from public employment]; *Hussey v. Sullivan,* 651 F.2d 74 (1st Cir. 1981) [action by police officer bypassed for promotion because of political activity, subject to six-month limitations period governing actions for wrongful discharge and demotion]; *Burns v. Sullivan,* 619 F.2d 99, 105–108 (1st Cir. 1980) [equal protection claim for racial discrimination in promotions governed by six-month limitations period applicable to state statutory actions for unlawful discrimination].

Other courts of appeals have applied tort or personal-injury limitations periods for section 1983 claims.[6] *See, e.g., Hines v.*

---

changeable at will. *See Beitzell v. Jeffrey,* 643 F.2d 870, 877–78 (1st Cir. 1981).

4. The complaint describes the due process violation as follows: "At no time either prior to or subsequent to the action taken by defendant was plaintiff Small afforded the opportunity to clear his name and/or contest any allegations of wrongdoing...." Complaint, at ¶ 15.

5. Section 753 limits "actions for assault and battery and for false imprisonment, slander,

libel, and malpractice of physicians...." 14 M.R.S.A. § 753.

6. District courts in other circuits differ in their choice of state limitations periods for similar section 1983 claims sounding in defamation. *Compare Duggan v. Town of Ocean City,* 516 F.Supp. 1081 (D.Md.1981), *with Hines v. Board of Education,* 492 F.Supp. 469 (E.D.Ky.1980), *aff'd* 667 F.2d 564 (6th Cir. 1982), *and deMarrais v. Community College of Allegheny Coun-*

*Board of Education,* 667 F.2d 564 (6th Cir. 1982) (*per curiam*), aff'g 492 F.Supp. 469 (E.D.Ky.1980) [limitations period for slander actions governs § 1983 claim of defamatory conduct during employee dismissal]; *Cramer v. Crutchfield,* 648 F.2d 943 (4th Cir. 1981) [state statute of limitations in personal injury actions applies in § 1983 action for unconstitutional search and seizure]; *Rubin v. O'Koren,* 644 F.2d 1023 (5th Cir. 1981) [§ 1983 claim predicated on alleged denial of due process in employment termination, governed by state statute of limitations in actions for "injury to the person or rights of another not arising from contract"]; *Polite v. Diehl,* 507 F.2d 119 (3d Cir. 1974) [§ 1983 claims of invalid arrest and physical abuse analogous to state actions for false arrest and for assault and battery, respectively]. *But see Garmon v. Foust,* 668 F.2d 400 (8th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982) [§ 1983 claims based on warrantless search and seizure and damage to reputation and earning capacity go beyond stating claim for injuries to person or reputation; therefore, general five-year limitations period, not two-year period for "injuries to person or reputation," applies].

----

ty, 407 F.Supp. 79 (W.D.Pa.1976), *aff'd* 571 F.2d 571 (3d Cir. 1978).

In *Hines* and *deMarrais,* both section 1983 actions alleging defamation in connection with a discharge from public employment, the courts looked to the most analogous state cause of action and borrowed the one-year limitations periods applicable to slander actions. *Accord Morey v. Independent School District,* 312 F.Supp. 1257, 1262 (D.Minn.1969) (alternative ground), *aff'd* 429 F.2d 428 (8th Cir. 1970). *See also Johnson v. Dailey,* 479 F.2d 86, 88 (8th Cir. 1973); *Savage v. United States,* 450 F.2d 449, 451–52 (8th Cir. 1971); *Chappelle v. Chase,* 487 F.Supp. 843, 846–47 (E.D.Pa.1980).

In a similar section 1983 action, the *Duggan* court declined to apply the one-year limitations period applicable to state defamation actions. *See* 516 F.Supp. 1081. Instead, the court applied a three-year Maryland limitations period, previously held applicable by that court in earlier section 1983 actions of a different nature, because there was "no justification for holding that the applicable statute of limitations varies with the facts upon which the action under § 1983 is premised," *id.* at 1083. The earlier cases had noted that actions under Article 23 of the Maryland Declaration of Rights, creating certain due process rights [recently recodified

The plaintiff insists that 14 M.R.S.A. § 752, the six-year statute of limitations made applicable to civil actions generally, "except as otherwise specifically provided," controls, citing the unpublished opinion in *Dow v. Board of Directors of S.A.D. No. 5,* Civ. No. 76–14–P (D.Me. August 9, 1977). In *Dow,* a section 1983 action based on the dismissal of a contract teacher without hearing or compliance with statutory dismissal procedures, Chief Judge Gignoux borrowed the general six-year limitations period from 14 M.R.S.A. § 752, citing *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063 (D.Me.1977).

*Curran* was a section 1983 action for sex discrimination in employment. The Court there applied the two-year limitations period prescribed by 5 M.R.S.A. § 4613(2)(C), governing actions for unlawful discrimination brought under the Maine Human Rights Act, because the Maine Human Rights Act created the right "obviously [bearing] the 'closest resemblance' to the federal cause of action asserted by the plaintiff." 435 F.Supp. at 1080.

In section 1983 actions more closely resembling state causes of action or remedies

----

as *Md.Const.Code Ann.* art. 24 (1981 Repl. Vol.) ], were governed by their own statute of limitations, *see Md.Ann.Code* art. 57, § 1 (1964 Repl.Vol.) [repealed and replaced by *Md.Cts. & Jud.Proc.Code Ann.* §§ 5–101, 5–102]. Given the close analogy between the section 1983 action and actions under Article 23, *which has its own three-year limitations period,* the Maryland federal district court considered it unnecessary to identify the most analogous state common law cause of action in tort for application in section 1983 actions. *See Davidson v. Koerber,* 454 F.Supp. 1256, 1259–60 (D.Md. 1978); *McIver v. Russell,* 264 F.Supp. 22, 30–31 n.17 (1967).

Although the Maine Constitution contains due process and equal protection provisions, *Me.Const.* art. I, § 6–A, it prescribes no limitations period. Indeed, in *McIver, supra,* the Maryland federal district court could find no provision in the laws of other states similar to Article 23. 264 F.Supp. at 27 n.8. Moreover, the First Circuit has refused to borrow a general, catch-all limitations period where a more closely analogous tort or personal injury action under state law would be specifically governed by another statute of limitations. *See Walden III, Inc. v. State of Rhode Island,* 576 F.2d 945 (1st Cir. 1978).

having their own limitations period, the First Circuit has not applied the more general state statutes of limitations. *See Holden v. Commission Against Discrimination,* 671 F.2d 30 (1st Cir. 1982) [applying six-month limitations period applicable to analogous statutory remedy rather than limitations periods generally applicable in tort (two years) or contract (six years) actions]; *accord Hussey v. Sullivan,* 651 F.2d 74 (1st Cir. 1981); *Burns v. Sullivan,* 619 F.2d 99 (1st Cir. 1980). *See also Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945 (1st Cir. 1978) [three-year limitations period on actions for "injuries to person," rather than catch-all, six-year limitations period, applies in § 1983 action for unconstitutional search and seizure, arrest, and assault].

The present constitutional claim is based on alleged defamatory conduct which resulted in a termination of employment, arguably entitling plaintiff to a name-clearing hearing, but not to reinstatement. The conduct complained of in *Dow* was in the nature of an infringement upon the property interest of the plaintiff in continued public employment and bears little resemblance either to the intentional torts dealt with in 14 M.R.S.A. § 753 or to any other state cause of action or remedy for which a specific limitations period is prescribed. Therefore, *Dow* appropriately applied the six-year, catch-all limitations period prescribed in 14 M.R.S.A. § 752. *Cf. Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1080 (D.Me.1977) [six-year limitations period under § 752 inapplicable where right of action under Maine Human Rights Act more closely resembled federal cause of action].

The clear analogy between the present federal cause of action and a state action for defamation makes the six-year, catch-all limitations period inappropriate in these circumstances. Although there may be distinctions between the federal and state causes of action, the search is for "the most *analogous* state law" action, which need not be "exactly on point." *See Hussey v. Sullivan,* 651 F.2d 74, 76 (1st Cir. 1981) (*per curiam*) (emphasis in original).

It is necessary to consider whether borrowing the two-year limitations period from section 753 would be "inconsistent with the federal policy underlying the [federal] cause of action under consideration." *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). *See Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir. 1980).

The Supreme Court has said that "[i]n borrowing a state period of limitations for application to a federal cause of action a federal court is relying on the state's wisdom in setting a limit . . . on the prosecution of a closely analogous claim." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. at 464, 95 S.Ct. at 1722. The public policy underlying statutes of limitations is explained by the Court.

> Thus, in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.

*Board of Regents v. Tomanio,* 446 U.S. at 487, 100 S.Ct. at 1796.

The application of the two-year limitations period borrowed from section 753 to the present section 1983 action contravenes no federal policy. In *Garmon v. Foust,* 668 F.2d 400 (8th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), the Eighth Circuit refused to apply the two-year Iowa limitations period applicable to actions for injuries to the person or reputation, preferring a general five-year limitations period for application in a section 1983 action based on a warrantless search and seizure which allegedly damaged plaintiff's reputation and earning capacity. The court rejected the tort analogy, because "it unduly cramps the significance of section 1983 as a broad statutory remedy." *Id.* at 406. The First Circuit has not rejected the tort analogy, however, *see Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945

(1st Cir. 1978); *Graffals Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir. 1977) (*per curiam*); nor has it been hesitant to apply short limitations periods to bar claims for the redress of significant constitutional rights, *see, e.g., Holden v. Commission Against Discrimination,* 671 F.2d 30 (1st Cir. 1982) [six-month limitations period for bringing due process, equal protection and free speech claims arising out of discharge from employment]; *accord Burns v. Sullivan,* 619 F.2d 99 (1st Cir. 1980).

In *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), the Supreme Court commented on the borrowing of a state three-year limitations period for application in a section 1983 due process challenge to the refusal by state officials to grant plaintiff a license to practice chiropractic:

> [T]wo of the principal policies embodied in § 1983 [are] deterrence and compensation. Neither of these policies is significantly affected by this rule of limitations since plaintiffs can still readily enforce their claims thereby recovering compensation and fostering deterrence simply by commencing their actions in three years.
>
> Uniformity has also been cited as a federal policy which sometimes necessitates the displacement of an otherwise applicable state rule of law. The need for uniformity, while paramount under some federal statutory schemes, has not been held to warrant the displacement of state statutes of limitations for civil rights actions.

*Id.* at 488–89, 100 S.Ct. at 1797–1798 (citations omitted). *Tomanio* held that the federal district court was required not only to apply the analogous New York statute of limitations, but also the New York rule that the running of the limitations period is *not* tolled while the plaintiff pursues a related, but independent, cause of action in state court.

Where relief is sought under section 1983 in the first instance in order to present both federal and state law claims in federal court, there is yet less reason to except the claimant from the limitations period applicable to the most closely analogous state law claim. Unlike the situation in *Tomanio,* where the delay in filing in the federal court may have been due in part to the pendency in state court of a suit based on a related claim, the plaintiff here apparently "slept on [his] rights," *see* 446 U.S. at 483, 100 S.Ct. at 1794, until the filing of the present action.

The borrowing of the two-year limitations period applicable in defamation actions under Maine common law, the most "analogous [state] cause of action," *see* 446 U.S. at 483–84, 100 S.Ct. at 1794–1795, for application in the present section 1983 action, seems to the Court entirely consistent "with the policies underlying § 1983," *see id.* at 487, 100 S.Ct. at 1796.

### III

### ACCRUAL OF THE CAUSE OF ACTION

The point at which a cause of action under section 1983 accrues is determined by federal law, *Rivera Fernandez v. Chardon,* 648 F.2d 765 (1st Cir.), *rev'd on other grounds,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (*per curiam*). The cause of action accrues from the date of the wrong. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (*per curiam*); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Holden v. Commission Against Discrimination,* 671 F.2d 30, 34–35 (1st Cir. 1982).

Whether the alleged wrong consisted of defamatory conduct by the city manager, the termination of plaintiff's employment, or the failure to afford plaintiff a name-clearing hearing, it clearly appears from the complaint that all critical events underlying the section 1983 claim occurred during February, 1976, well over four years before the filing of the complaint on August 25, 1980, well after the expiration of the applicable two-year period of limitations.

### IV

### CONCLUSION

Although the section 1983 action is time barred, a *Bivens*-type action does not lie, since the section 1983 is considered to have been "available" during the two-year limitations period. *Ward v. Caulk,* 650 F.2d 1144, 1148 (9th Cir. 1981). *Cf. Kostka v.*

*Hogg,* 560 F.2d 37 (1st Cir. 1977) [*Bivens* claim would not be allowed as a means of circumventing then-existing bar against municipal liability for damages under § 1983].

The separate *Bivens*-type cause of action asserted by plaintiff is DISMISSED.

The due process claim brought under section 1983 is barred under the applicable two-year period of limitations borrowed from 14 M.R.S.A. § 753, and is therefore DISMISSED.

The pendant state law claim for defamation is likewise DISMISSED.[7]  *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *B. C. Recreational Industries v. First National Bank,* 639 F.2d 828, 834 (1st Cir. 1981); *Landrigan v. City of Warwick,* 628 F.2d 736, 748 (1st Cir. 1980).

---

**7.** Although any state court action for defamation which plaintiff may seek to bring in state court might be deemed barred under 14 M.R.S.A. § 753 as well, the limitations period expired *prior* to the filing of the complaint in the present action. The unproductive pursuit of these claims in federal court had nothing to do with the expiration of the limitations period barring access to the courts of the State. *Compare Rheaume v. Texas Dept. of Public Safety,* 666 F.2d 925, 932 (5th Cir. 1982); *O'Brien v. Continental Illinois Nat. Bank & Trust,* 593 F.2d 54, 63–65 (7th Cir. 1979).